IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARINER ENERGY, INC., *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-0658 |
| § | |
| DEVON ENERGY PRODUCTION CO., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

**I.    Background**

This case presents the issue of the extent to which a prior owner of an offshore oil and gas block is liable under a contract of assignment to pay the costs of decommissioning and abandoning the block years later, after a hurricane made the costs much higher than anticipated.[1] This court's opinion in *Mariner Energy, Inc. v. Devon Energy Production Co.*, 690 F. Supp. 2d 558 (S.D. Tex. 2010), sets out the background facts in detail. This memorandum and order addresses one aspect of the abandonment and decommissioning costs not covered in this court's prior opinion.

A brief summary of the facts is all that is needed. In 1973, the United States government leased an offshore oil and gas block located in the Gulf of Mexico, Eugene Island 333 ("EI 333"), to five companies. The companies were Mobil Oil Corporation; Burmah Oil Development; Mesa Petroleum Company; Pennzoil Offshore Gas Operators, Inc.; and Pennzoil Louisiana and Texas Offshore, Inc. The parties entered into a Joint Operating Agreement (the "JOA"). The JOA

---

[1] "Decommissioning and abandoning" refers to the procedures necessary to end use of a block and restore it to a state that complies with federal regulations.

1

designated Mobil as the "Operator" of EI 333. The JOA required Mobil to maintain a Joint Account to which all joint operating expenses would be charged and all joint income (other than proceeds from the sale of oil and gas) would be credited. Under the JOA, "[p]latforms constructed for the Joint Account and intended for use in the joint development and operation of the Joint Lease . . . shall be owned in proportionate shares." With limited exceptions, "[a]ll costs, risk, and expense incurred with respect to platforms and facilities . . . [would] be charged to the Joint Account." The JOA specified that if the owners of EI 333 agreed in writing that "no further use will be made of any jointly owned platform or facilities in connection with operations on the Joint Lease," the equipment or platform "may be removed from the Joint Lease by the Operator as a charge to the Joint Account." The interests in the EI 333 lease were transferred over time by various assignments. In 2001, Devon Energy Production Company, Phillips Petroleum, and Forest Oil Corporation owned the lease shares. Devon, the defendant in this lawsuit, was the operator of EI 333 and owned a 76% share.

In February 2002, Forest Oil assigned its 13.333% interest in EI 333 to Devon and Phillips through a Letter Agreement, effective December 1, 2000. The Letter Agreement defined "Abandonment Expenses" as "plugging and abandonment costs on [EI 333], including but not limited to removal and abandonment of platforms, wells, [and] equipment on [EI 333]" and stated that "Forest will only be liable for its proportionate share of Abandonment Expenses for wells, platforms and equipment on the Block as of the effective Date and as outlined in the Twachtman Snyder & Bird, Inc. Decommissioning Liability Report." (Docket Entry No. 32, Ex. A, Letter Agreement, at 2). The Twachtman Snyder & Bird, Inc. Decommissioning Liability Report (the "Twachtman Report"), attached to the Letter Agreement, described the abandonment work for EI

2

333 and provided decommissioning estimates, which were prepared for Devon in June 2001.

In June 2005, the plaintiff, Mariner Energy, acquired Forest Oil's offshore interests in the Gulf of Mexico. As part of the acquisition, Mariner assumed Forest Oil's abandonment obligations under the Letter Agreement. In September 2005, Hurricane Rita caused extensive damage to the EI 333 platform and wells. Devon decided to decommission and abandon EI 333. A series of communications between Devon and Mariner relayed Devon's demand for Mariner to pay $25 million for its 13.333% share. Mariner filed this suit seeking a declaratory judgment: (1) limiting its obligation to pay Devon to the costs of the scope of work as outlined in the Twachtman Report; and (2) limiting its obligation to pay to the abandonment expenses related to equipment that was on EI 333 on December 1, 2010, the date the assignment from Forest Oil to Devon was effective.

In the first phase of this litigation, the parties conducted targeted discovery and filed motions for partial summary judgment asking this court to interpret the Letter Agreement to determine whether Mariner's liability for abandonment costs was limited to the scope of work as outlined in the Twachtman Report, as Mariner argued, or extended to the actual costs of abandoning the block, as Devon argued. This court held that the Letter Agreement obligated Mariner to pay for the abandonment costs within the scope of work as outlined in the Twachtman Report. (Docket Entry No. 57). As a result, Mariner was not required to pay the approximately 4,000% increase in abandonment costs resulting from damage inflicted by Hurricane Rita in 2005, but had to pay its share of the cost of abandoning and decommissioning EI 333 within the scope of the work as outlined in the Twachtman Report, which did not include the considerable additional expense caused by the hurricane damage.

Based on that ruling, the parties agreed on how to allocate most of the abandonment costs,

3

while preserving the right to challenge this court's ruling. The parties disagree about allocating one item: the abandonment costs resulting from Devon's inability to "reef" the platform jacket. "Reefing" the platform jacket means leaving the supporting structure of the platform deck underwater to be used as an artificial reef rather than retrieving it and disposing of it onshore. The Twachtman Report assumed that the EI 333's jacket would be reefed three nautical miles from its original location. (Docket Entry No. 70, at 3); (Docket Entry No. 72, Ex. B, Twachtman Report, Section 4). The State of Louisiana, however, denied permission to reef the platform jacket after Hurricane Rita. (Docket Entry No. 70, at 3). The parties dispute whether Louisiana's denial was related to the hurricane, though neither side has identified or submitted evidence on this issue. Because Devon could not reef the jacket, it had to "detach, disassemble and dispose of" it as part of decommissioning and abandoning the platform, increasing the costs. (Docket Entry No. 70, at 3); (Docket Entry No. 72, ¶ 21). Devon's costs also increased because the platform jacket had fallen to the sea floor during Hurricane Rita and had to be brought to the surface and taken to shore. The inability to reef the platform and the need to retrieve it and take it to shore increased the total decommissioning costs between two and six million dollars beyond the costs estimated by the Twachtman Report. (Docket Entry No. 70, at 3).

Mariner and Devon have filed cross-motions for summary judgment asking this court to determine whether Mariner must pay a 13.333% share of the additional costs associated with Devon's inability to reef the platform jacket as anticipated in the Twachtman Report. (Docket Entry Nos. 70, 72). Each party responded to the other's motion. (Docket Entry Nos. 73, 74). Devon points to the Letter Agreement's statement that Mariner is obligated to pay its share of "all liabilities arising out of Forest Oil Corporation's (Mariner's predecessor-in-interest) ownership in EI 333" and

4

that such liabilities include "all abandonment costs on Block EI 333, 'including but not limited to' the costs for work consisting of the 'removal and abandonment of platforms, wells, [and] equipment on' the Block." (Docket Entry No. 70, at 4). Devon emphasizes that the Letter Agreement's assumption that the jacket could be reefed turned out to be incorrect. Devon argues that because that assumption was false, Mariner is liable for its proportionate share of the increased costs associated with Devon's inability to reef the jacket. (*Id.* at 5–6). Mariner responds that this court's previous ruling limits its liability to the scope of work as outlined in the Twachtman Report, even if the assumptions used in the Twachtman Report were wrong. Mariner emphasizes that under this court's previous ruling, it is liable "only for its proportionate share for the scope of work *outlined* in the Twachtman Report and for no other costs." (Docket Entry No. 72, at 5, emphasis in original). Alternatively, Mariner argues that the increased costs from Devon's inability to reef the jacket are related to Hurricane Rita. Mariner argues that "had Devon made [the decision to abandon the platform] months before, or even months or years later, the State of Louisiana might have granted the reefing permit." Mariner also points out that at least some of the cost increases—those related to the jacket being tossed to the sea floor during the hurricane—are hurricane related. (*Id*. at 7).[2]

Based on the motions, responses, the summary judgment evidence, this court's previous decision, and the applicable law, Mariner's motion for summary judgment is granted and Devon's motion for summary for judgment is denied. The reasons for this ruling are explained below.

---

[2] Mariner further claims that Devon has waived any argument about Mariner's liability for costs for work beyond the scope of work outlined in the Twachtman Report that it did not raise and litigate in the extensive briefing that led to this court's February 11 order. (Docket Entry No. 72, ¶ 23). Devon responded that its argument was not waived because it is raising the issue before the court enters final judgment. To the extent the present motions ask whether certain amounts are governed by the court's ruling in the February 11 order, it is not waived. The motion granting partial summary judgment is interlocutory in nature and is therefore subject to later revision and additional rulings. *Hand v. UNUM Provident Corp.*, 202 F. App'x 689, 692 (5th Cir. 2006).

**II.     Analysis**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). This court previously found that under Louisiana law—which the parties agree applies[3]—"Mariner's liability is limited to the scope of work 'as outlined' in the Twachtman Report, not for work required to respond to storm damage." (Docket Entry No. 55, at 33). This court's ruling is consistent with the Letter Agreement's unambiguous statement that "Forest will be liable only for its proportionate share of Abandonment Expenses for wells, platforms, and equipment on the Block as of the effective date *and as outlined* in the Twachtman Snyder & Bird, Inc. Decommissioning Liability Report." This court concluded that the word "and" meant that: (1) Forest Oil's (and now Mariner's) liability was limited to its proportionate share of abandonment costs for the wells, platforms, and equipment that was on EI 333 as of the effective date, December 1, 2000; and (2) Forest Oil's (and now Mariner's) liability was limited to the scope of work "as outlined" in the Twachtman Report. This court summarized its ruling as follows: "Forest Oil—now Mariner—is liable to pay its proportionate share of the Abandonment Expenses for the wells, platforms, and equipment in place as of December 1, 2000 based on the assumptions about the extent and nature of the work set out in the Twachtman Report." (*Id.* at 28). This court's opinion recognized that certain costs of the scope of work outlined

---

[3]  Under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*, which is the jurisdictional basis for this case, a federal court is to apply the law of whichever state is adjacent to the relevant area of the Outer Continental Shelf. 43 U.S.C. §§ 1333(a)(1), (a)(2); *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 496 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 & n.8 (5th Cir. 2009) (en banc); *Amoco Production Co. v. Forest Oil Corp.*, 844 F.2d 251, 253 (5th Cir. 1988). The law of the adjacent state is adopted as "surrogate federal law" to the extent it does not conflict with federal law and federal maritime law does not apply of its own force. 43 U.S.C. §§ 1332(a)(1), (a)(2); *Grand Isle Shipyard*, 589 F.3d at 782–83, 789. Louisiana is adjacent to EI 333. Neither party contends that Louisiana law is inconsistent with or superceded by relevant federal law. Moreover, the JOA provides that Louisiana law governs any disputes between the parties relating to "the intent and legal interpretation" of the JOA. (Docket Entry No. 32, Ex. C, at 40).

6

in the Twachtman Report "were explicitly recognized as an estimate that could be reduced or increased when the actual work was done." The opinion stated that if the actual costs of the scope of work as outlined in the Twachtman Report exceeded the report's estimates, Mariner was liable for its proportionate share of those costs. But the only costs for which Mariner was liable to pay a 13.333% share were the costs for work "as outlined" in the report. The opinion stated, "[T]he work had to be 'as outlined' in the report." (*Id.* at 29).

The issue is whether the increased decommissioning and abandonment costs caused by the State of Louisiana's denial of approval to reef the EI 333 jacket and the jacket tumbling to the sea floor after Hurricane Rita are costs above the estimates for the scope of work as outlined in the Twachtman Report—for which Mariner bears proportionate responsibility—or costs outside the scope of work as outlined in the Twachtman Report—for which Mariner does not bear proportionate responsibility. Devon's motion for summary judgment does not dispute that these costs are for work outside the scope of work as outlined in the Twachtman Report. Instead, Devon's argument is that because the Twachtman Report incorrectly assumed that the jacket could be reefed, Mariner's liability is not limited by the Twachtman Report. (Docket Entry No. 70, at 5).

For the reasons set out in this court's previous opinion, Mariner is not liable for the costs of work beyond the scope of work as outlined in the Twachtman Report. It is true, as Devon points out, that the Twachtman Report did not assume that the State of Louisiana would deny permission to reef the jacket. Similarly, the report did not assume that the jacket would tumble to the sea floor and have to be retrieved, further increasing the work required and the costs. But the Twachtman Report also did not assume a hurricane that would dramatically increase the scope of work required to abandon and decommission EI 333 and dramatically increase the costs. Mariner is liable for the

7

costs of the scope of work as outlined in the Twachtman Report. The work of removing the jacket from the sea floor and disassembling the jacket to abandon it, as opposed to reefing it, is not within the scope of work as outlined in the Twachtman Report. Mariner is not liable for its proportionate share of the costs caused by the State of Louisiana's denial of approval to reef the EI 333 jacket or the jacket tumbling to the sea floor in Hurricane Rita.

Devon points to language from the Letter Agreement stating as follows:

> Forest agrees that it will remain obligated to Devon and Phillips under the JOA for its share of all liabilities arising out of its ownership in the Black and its participation in operations conducted on the Block prior to the Effective Date. Devon and Phillips agree that Forest will not be obligated to pay its share of such plugging and abandonment costs, *including but not limited to* removal and abandonment of platforms, wells, equipment on the Block ("Abandonment Expenses"), until the time such abandonment operations commence on the Block for the amount then due at the time that the Abandonment Expenses are incurred.

Devon argues that the "including but not limited to" language establishes that Mariner is liable for its proportionate share of all the actual abandonment costs. In its previous motion for summary judgment, Devon did not argue that the "including but not limited to" language means that Mariner is responsible for 13.333% of the costs of work beyond the scope of work as outlined in the Twachtman Report. (Docket Entry No. 30, at 11–19). The language "including but not limited to" applies to the plugging and abandonment costs of "removal and abandonment of platforms, wells, equipment, on the block ('Abandonment Expenses')." This court held that Mariner's liability for its share of the defined term "Abandonment Expenses" is in turn limited to its share of those expenses "as outlined" in the Twachtman Report. The phrase "including but not limited to" is not inconsistent with the limitation on Mariner's liability for the Abandonment Expenses.

Devon's interpretation is also inconsistent with Louisiana rules of contract interpretation.

8

The language Devon cites was in the section of the Letter Agreement addressing Forest Oil's (now Mariner's) obligation to pay its proportionate share of Abandonment Expenses when those expenses are actually incurred. That section of the Agreement did not define what share of the Abandonment Expenses Forest Oil would be liable to pay. The limits on Forest Oil's responsibility to pay its share of the Abandonment Expenses are addressed in the Letter Agreement's statement that "Forest will be liable only for its proportionate share of Abandonment Expenses for wells, platforms, and equipment on the Block as of the effective date *and as outlined* in the Twachtman Snyder & Bird, Inc. Decommissioning Liability Report." Under Louisiana law, "[i]t is a fundamental axiom of contract interpretation that specific provisions control general provisions." *Baton Rouge Oil and Chemical Workers Union v. ExxonMobil Corp.*, 289 F.3d 373 (5th Cir. 2002) (citing RESTATEMENT (SECOND) OF CONTRACTS § 203(c)). The specific language limiting Mariner's liability controls to the extent the general language describing Forest Oil's liability conflicts with it. Devon's argument is also inconsistent with the Louisiana rule that "[c]ontract provisions susceptible to different meanings should be interpreted to avoid neutralizing or ignoring any of them or treating them as surplusage." *Id.* (quoting *Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741–42 (5th Cir. 1998)). Devon's interpretation neutralizes the language limiting Mariner's liability to Abandonment Expenses as outlined in the Twachtman Report. For these reasons, and the reasons in this court's previous opinion, Devon's proposed contract interpretation is not persuasive.

**IV.    Conclusion**

Mariner's motion for partial summary judgment, (Docket Entry No. 72), is granted. Devon's motion for partial summary judgment, (Docket Entry No. 70), is denied. Mariner is not liable for a proportionate share of the costs caused by: (1) the State of Louisiana's denial of approval to reef

the EI 333 jacket; and (2) the jacket tumbling to the sea floor after Hurricane Rita.

By August 15, 2011, the parties are to submit either a written report updating the court on the status of any unresolved issues in this case or a proposed final judgment.

SIGNED on August 3, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge