IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARINER ENERGY, INC., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0658 |
| | § | |
| DEVON ENERGY PRODUCTION CO., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

**I.   Background**

This court's opinion in *Mariner Energy, Inc. v. Devon Energy Production Co.*, 690 F. Supp. 2d 558 (S.D. Tex. 2010), sets out the background facts in detail. This memorandum and order addresses a limited legal issue: whether, under Louisiana law, the prevailing party in this suit is entitled to prejudgment interest. The facts are only briefly summarized here. This dispute arises from a letter agreement between Forest Oil Corporation, predecessor in interest to the plaintiffs, Mariner Energy, Inc. and Mariner Energy Resources, Inc. (together, "Mariner"), and the defendant, Devon Energy Production Co. The letter agreement addressed, in part, the parties' obligations to pay for abandoning an offshore oil and gas block located in the Gulf of Mexico. That block is referred to during this litigation as EI 333. In this suit against Devon, Mariner sought a declaratory judgment that it was not liable under the letter agreement for abandonment costs resulting from damage to EI 333 inflicted by Hurricane Rita in 2005. Mariner also sought to recover money it allegedly overpaid Devon for hurricane damage to EI 333. Devon counterclaimed under the same letter agreement, asserting that Mariner had breached its contract by refusing to pay its full

proportionate share of the hurricane-related costs and seeking a declaratory judgment that Devon was liable for those costs.

The court bifurcated the case into a liability phase and a damages phase. The liability phase is now complete. In two prior rulings, this court entered partial summary judgment in Mariner's favor on issues related to the parties' liability for abandonment costs under the letter agreement. Based on these rulings, the parties agree that Mariner paid Devon $4,433,575.49 that Mariner did not owe and that Devon must return this amount. The parties disagree over whether Mariner is entitled to prejudgment interest on the overpayment and filed cross-motions for summary judgment on this issue. Devon's motion argues that Louisiana law does not allow prejudgment interest on legitimately contested unjust-enrichment claims. (Docket Entry No. 79, at 5–8.) Mariner's motion argues that Louisiana law allows prejudgment interest when "the unjust enrichment claim arises from overpayment under a valid contract." (Docket Entry No. 80, at 17.) Both parties have responded to each other's motions. (Docket Entries No. 82 & 83.)

Based on the pleadings; the motions and responses; and the relevant law, this court concludes that Mariner is entitled to prejudgment interest, but only from the date of judicial demand and not from the earlier date of the payment. The reasons for this ruling are explained below.

**II.     Analysis[1]**

Articles 2298 through 2305 of the Louisiana Civil Code address unjust enrichment and recognize two causes of action: enrichment without cause and payment of a thing not owed. Article 2298, which governs enrichment without cause, states that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." LA. CIV. CODE

---

[1] Summary judgment is appropriate when, as here, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

ANN. art. 2298 (2010). Article 2298 is "based on the concept that one who benefits by the labor and materials of another should not be unjustly enriched thereby. Under those circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor." *Ricky's Diesel Serv., Inc. v. Pinell*, 906 So.2d 536, 539 (La. Ct. App. 2005). "The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less." LA. CIV. CODE ANN. art. 2298. Enrichment without cause is a "subsidiary" remedy that is "not be available if the law provides another remedy for the impoverishment." *Id.* Louisiana law does not allow prejudgment interest on recovery for enrichment without cause under article 2298 involving services or materials rendered for the benefit of another. *See, e.g., Gulfstream Servs., Inc. v. Hot Energy Servs., Inc.*, 907 So.2d 96, 103 (La. Ct. App. 2005) (holding that the plaintiff was not entitled to prejudgment interest on the amount recovered as compensation for the defendant's use of its oil tanks); *Howell v. Rhoades*, 547 So.2d 1087, 1090 (La. Ct. App. 1989) (holding that the plaintiff, who recovered the value of his services for preparing architectural plans, was not entitled to prejudgment interest).

Article 2299 governs the cause of action for payment of a thing not owed. The article states that "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." LA. CIV. CODE ANN. art. 2299. "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist." *Id.* art. 2300. "The remedy that Article 2299 provides is not subsidiary; this remedy is available even if other remedies are also available" and the plaintiff "may choose the theory of recovery that best suits his interests." *Id.* art. 2299 cmt. (c). In this case, Mariner brought a claim for payment of a thing not owed under

3

article 2299.² The issue is whether Louisiana law³ allows Mariner, as the prevailing party, to recover prejudgment interest on its article 2299 claim.

Mariner argues that it is entitled to prejudgment interest under article 2000 of the Louisiana Civil Code. Article 2000 states that "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500." *Id.* art. 2000. Article 2000 clearly governs the award of prejudgment interest in breach of contract cases. *See S. Marine Sales, Inc. v. Matherne*, 915 So.2d 1042, 1048 (La. Ct. App. 2005) ("The law is clear that legal interest is recoverable on debts arising *ex contractu* from the time they become due, unless otherwise stipulated." (citing LA. CIV. CODE ANN. art. 2000)). But it is unclear whether article 2000 applies to article 2299 unjust-enrichment claims based on the erroneous payment of amounts not owed. As Devon points out, the structure of the Louisiana Civil Code suggests that article 2000 applies only in breach of contract cases. Article 2000 appears in Section 4 ("Damages") of Chapter 8 ("Effects of Conventional Obligations") of Title IV ("*Conventional Obligations or Contracts*") of Book III of the Civil Code. By contrast, article 2299 appears in Section 2 ("Payment of a Thing Not Owed") of Chapter 2 ("Enrichment Without Cause") of Title V ("*Obligations Arising Without Agreement*") of Book III of the Civil Code. Because Devon's

---

² Mariner's unjust enrichment claim alleged as follows: "Mariner asserts that it made payments to Devon in error for charges which appear to be associated with Hurricane Rita. Mariner is not liable for such charges under the terms of the Letter Agreement. Devon has thus been unjustly enriched since Mariner had no obligation to make these payments and Devon has no right to retain such payments. Mariner seeks recovery of all such sums paid to Devon." (Compl. ¶ 17.)

³ Because Louisiana is adjacent to EI 333 and because the Outer Continental Shelf Lands Act ("OCSLA") is the jurisdictional basis for this case, the parties agree that Louisiana law governs the award of prejudgment interest. *See Gates v. Shell Offshore, Inc.*, 881 F.2d 215, 218–19 & n.1 (5th Cir. 1989) (applying Louisiana law as "surrogate federal law" to determine whether prejudgment interest was allowed in an OCSLA case).

obligation to return Mariner's overpayment is a quasi-contractual obligation imposed by article 2299, Devon argues that article 2000 does not apply. *Cf. Garlepied Transfer, Inc. v. Guar. Bank & Trust Co.*, 685 So.2d 194, 195 (La. Ct. App. 1996) ("[A]rticles [2000 and 2001] are found in Title IV of the Civil Code, entitled 'Conventional Obligations or Contracts.' [The plaintiff's] damages were awarded for breach of fiduciary duty, a tort, not a contractual matter.").

Mariner asserts that article 2000 "was the basis for an award of pre-judgment interest in *Exxon Corp. v. Goodrich*, 720 So.2d 17 (La. Ct. App. 1998), a case with facts virtually identical to those in the case at bar." (Docket Entry No. 80, at 13.) In *Goodrich*, Exxon, the operator of natural gas units, sued the owners of mineral, royalty, and leasehold interests to recover certain overpayments Exxon had made. The parties' Joint Operating Contract ("JOC") provided that if Exxon invoiced the defendant owners for the payments Exxon had made, the defendants had to pay Exxon's invoices within 15 days. *Goodrich*, 720 So.2d at 23–24. In other words, the contract imposed an obligation to return the overpayments if they were demanded in an invoice. The contract also specified a 6% interest rate for unpaid amounts. The trial court held that Exxon was entitled to recover the overpayments, found that the JOC "mandated that the unpaid balances owed by the defendants to Exxon bear interest at the rate of 6% per annum," and awarded prejudgment interest at the contractual rate. *Id.* at 23. On appeal, Exxon asserted that "the trial court erred in awarding interest at the [contractual] rate." *Id.* Exxon argued that because the overpayments "were erroneous payments made for things not due," they were not governed by the JOC "and, therefore, [were] subject to legal interest [at the statutory rate]." *Id.* Rejecting Exxon's argument, the appellate court held that the JOC governed. *Id.* at 24. Because the parties had agreed to a contractual prejudgment interest rate, the court held that under article 2000 of the Louisiana Civil Code the contractual

5

interest rate, not the statutory rate, applied. *Id. Goodrich* does not support Mariner's argument that article 2000 applies to its unjust-enrichment overpayment claim. In *Goodrich*, the defendants were contractually obligated to pay Exxon's invoices, including the invoices for the overpayments. In this case, Mariner has not identified a contractual provision obligating Devon to return the overpayments Mariner made.

Although *Goodrich* does not support the application of article 2000 to article 2299 claims, *Futorian Corp. v. Marx*, 420 So.2d 702 (La. Ct. App. 1982), does. In *Futorian*, a former employer sued to recover disability benefits paid to a former employee after that employee had gone to work for a new employer. *Id.* at 703. The employee did not notify his former employer that he had returned to work. *Id.* Instead, after starting the new job, he signed a statement indicating that he was still disabled and unable to work. *Id.* The trial court held that the employee had to return the disability payments he received after returning to work and awarded the former employer prejudgment interest on the disability payments from the date of judicial demand. *Id.* at 704. On appeal, the employee argued "that he should not be cast for interest before judgment because he was in good faith and La.C.C. 2311 provides only that one in bad faith owes interest from the date of the erroneous payment."[4] *Id.* Affirming the decision of the trial court, the Louisiana Court of Appeals cited the 1982 version of article 1938 of the Louisiana Civil Code and explained:

> The judgment here awarded interest only from judicial demand and not from payment. *The general rule is that interest is due from the time a contractual or quasi-contractual debt is due. La.C.C. 1938.* C.C. 2311 relieves the good faith recipient of funds paid in error from

---

[4] When *Futorian* was decided, Article 2311 was part of the Louisiana Civil Code articles governing unjust enrichment. Article 2311 stated that "[i]f there be any want of good faith on the part of him who has received, he is bound to restore not only the capital, but also the interest on the proceeds from the day of payment." LA. CIV. CODE ANN. art. 2311 (1983). In 1995, article 2303 replaced article 2311. Article 2303 states that "[a] person who in bad faith received a payment or a thing not owed to him is bound to restore it with its fruits and products." *Id.* art. 2303 (2010).

6

>      interest from date of payment, but not from the time that the
>      erroneous nature of the payment is called to his attention. He owes
>      interest at least from judicial demand.

*Id.* (emphasis added). The 1982 version of article 1938[5] was a precursor of article 2000. The 1984 revision comments to the Louisiana Civil Code explain that article 2000 "reproduces the substance" of former articles 1935, 1937, and 1940, and that with the adoption of article 2000, former articles 1936 and 1938 "ha[ve] been eliminated as unnecessary." LA. CIVIL CODE ANN. art. 2000 cmts. (a), (b). *Futorian*'s application of former article 1938 to an unjust-enrichment overpayment claim suggests that article 2000 applies to such claims. At least one Louisiana federal district court has applied article 2000 to an article 2299 claim. *See Bank One, N.A. v. A. Levet Props. P'ship*, No. Civ. A. 03-1373, 2004 WL 1661204, at *4 (E.D. La. July 22, 2004).

There is, however, no need for this court to decide whether article 2000 applies to article 2299 overpayment or erroneous payment claims. If article 2000 applies, Mariner is entitled to prejudgment interest from the date of judicial demand.[6] If article 2000 does not apply, the result is the same. Numerous Louisiana appellate decisions have awarded prejudgment interest from the date of judicial demand on unjust-enrichment overpayment or erroneous payment claims. *See Hebert v. Jeffrey*, 655 So.2d 353, 355 (La. Ct. App. 1995) (holding that an employee had to reimburse his

---

[5] Article 1938, titled "Time from which legal interest is due," stated: "All debts shall bear interest at the rate of twelve percent per annum from the time they become due, unless otherwise stipulated." LA. CIV. CODE ANN. art. 1938 (1983).

[6] Prejudgment interest under article 2000 runs at least from the date of judicial demand, and may run from an earlier date. *See Mini Togs Prods., Inc. v. Wallace*, 513 So.2d 867, 875 (La. Ct. App. 1987) (holding that, under article 2000, "legal interest is due at least from [the] date of judicial demand on a claim for damages arising out of breach of contract, regardless of whether the precise amount of the claim is unliquidated, disputed or not ascertainable with certainty at the time suit is filed"). Mariner does not argue—nor is there evidence—that Devon retained the overpayments in bad faith, as required under *Futorian* to award prejudgment interest on unjust-enrichment overpayment claims from the date the overpayments were made. Devon retained the overpayments because it believed Mariner was liable under the letter agreement for the invoiced amounts. Though this court agreed with Mariner's interpretation of the letter agreement, the record makes clear that Devon's disagreement was in good faith.

employer for worker's compensation benefits the employer paid but did not owe and awarding interest from the date of judicial demand); *Matthews v. Sun Exploration & Prod. Co.*, 521 So.2d 1192, 1199 (La. Ct. App. 1988) (holding that a lessee was entitled to recover the amount of royalty overpayments made under an oil lease "plus interest at the legal rate from date of judicial demand"); *C.H. Fenstermaker & Assocs. v. Regard*, 471 So.2d 1137, 1140 (La. Ct. App. 1985) (holding that a contractor was entitled to recover "what he paid" under an invoice "for services which were to have been provided . . . at no charge" and awarding interest from the date of judicial demand); *Shelter Ins. Co. v. Cruse*, 446 So.2d 893, 895 (La. Ct. App. 1984) (holding that an insurer was entitled to recover money paid under a void insurance policy from the insured "with legal interest from judicial demand"); *see also Mathews v. La. Health Serv. & Indem. Co.*, 471 So.2d 1199, 1203 (La. Ct. App. 1985); *Head v. Adams*, 275 So.2d 476, 479 (La. Ct. App. 1973); *Whitehall Oil Co. v. Boagni*, 217 So.2d 707, 709–13 (La. Ct. App. 1969); *Monochem, Inc. v. E. Ascension Tel. Co.*, 195 So.2d 748, 751 (La. Ct. App. 1967); *Mfrs. & Traders Trust Co. v. Bank of La. in New Orleans*, 167 So.2d 383, 386–87 (La. Ct. App. 1964). Whether under article 2000 or under the Louisiana cases that have awarded prejudgment interest on unjust-enrichment overpayment or erroneous payment claims, Mariner is entitled to interest from the date of judicial demand.[7]

---

[7] This result is consistent with the role prejudgment interest serves under Louisiana law. Louisiana courts have rejected "the common law view of interest as punitive in nature." *Trans-Global Alloy Ltd. v. First Nat'l Bank of Jefferson Parish*, 583 So.2d 443, 457 (La. 1991). Under that view, "when damages are reasonably ascertainable, the defendant can determine what his liability might be, and stop the accrual of interest by paying the claim; when the damages are uncertain, however, the defendant cannot determine the extent of his liability prior to trial, and it would be unjust to penalize him for failure to pay the damages before judgment." *Id.* "Under civil law doctrine, however, damages are viewed as reparation for the loss suffered by the creditor, and not as a penalty imposed on the debtor." *Id.* (citations omitted). Louisiana courts recognize that "money has a 'use' value, and that prejudgment interest, which represents the use which the defendant has had of the money found to be owed to the plaintiff, is a necessary component of the plaintiff's full compensation." *Id.* at 458. "[A]llowing the defendant to keep the interest that could be earned on the amount eventually awarded would result in his unjust enrichment. The defendant is not penalized by prejudgment interest because he is only returning the benefits he has received from use of the plaintiff's money." *Id.* (internal citations omitted).

Devon cites *State v. Placke*, 786 So.2d 889 (La. Ct. App. 2001), but that case does not compel a different result. In *Placke*, a state hospital overpaid a damage award recovered by the defendants against the hospital in an underlying medical-malpractice lawsuit. 786 So.2d at 891. In the underlying litigation, the hospital was found liable for malpractice and the trial court determined that the defendants' "actual damages were $3,041,833.75." *Id.* at 892. The trial court substantially reduced this amount because a Louisiana statute imposed a cap on recoveries in medical-malpractice cases. *Id.* The hospital "tendered a check in the amount of $1,888,973.99 along with a 'Satisfaction of Judgment'" to the defendants. The hospital alleged in the later suit that "the correct figure was $1,188,973.99." *Id.* at 892. After the hospital "discovered that it had paid more than the amount judicially enforceable against it by statute," it sued to recover the amount it had overpaid. *Id.* The trial court granted the hospital's motion for summary judgment and required the defendants to "pay interest from the date of judgment only, rather than from the date of judicial demand." *Id.* On appeal, the defendants argued "that the trial court's judgment [in the underlying litigation] finding the State liable for in excess of three million dollars created a natural obligation supporting the payment of damages above the . . . statutory cap." *Id.* The hospital cross-appealed, arguing that it was entitled to prejudgment interest on the overpayment under article 2303 of the Louisiana Civil Code.

After rejecting the defendants' argument that they were entitled to retain the overpayment based on a natural obligation theory, the appellate court held that the hospital was not entitled to prejudgment interest under article 2303. Under article 2303, "[a] person who in bad faith received a payment of a thing not owed to him is bound to restore it with its fruits and products." LA. CIV. CODE ANN. art 2303. The court explained that the question before it was "whether or not the undisputed facts . . . constitute bad faith on the part of the Defendants" in retaining the hospital's

9

overpayment. *Placke*, 786 So.2d at 897. The court found "that there was a colorable argument for extending the concept of natural obligation to the State in situations where a court has determined that a plaintiff has been damaged by the State in an amount greater than that which is judicially enforceable against it." *Id.* Because the defendants "were acting under the belief that they had a good faith argument for retaining the overpayment," the court held that, as a matter of law, "no article 2303 sanctions [were] warranted" and the hospital was not entitled to prejudgment interest under article 2303. *Id.*

In *Placke*, the only issue was whether the prevailing party awarded the overpayment was entitled to prejudgment interest under article 2303 absent a showing of bad faith. The court did not address whether the hospital could have recovered prejudgment interest under article 2000 or under Louisiana cases awarding prejudgment interest on unjust-enrichment overpayment or erroneous payment claims. *Placke* does not compel the conclusion that Mariner is not entitled to prejudgment interest in this case.

### III. Conclusion

Mariner's motion for partial summary judgment, (Docket Entry No. 80), is granted. Devon's motion for partial summary judgment, (Docket Entry No. 79), is denied. By **February 3, 2012**, the parties must file a proposed order entering final judgment in this case.

SIGNED on January 30, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge